UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.                                    **MEMORANDUM OF LAW & ORDER**
                                         Crim. No. 15-MJ-312(4)

Zacharia Yusuf Abdurahman,

    Defendant.
_____

    John Docherty and Andrew Winter, Assistant United States Attorneys, Counsel for Plaintiff.

    Jon M. Hopeman, Felhaber Larson, Counsel for Defendant.
_____

**I.    Introduction**

This matter is before the Court on the Defendant's Motion to Review the Detention Order of Magistrate Judge Becky Thorson dated May 1, 2015 [Doc. No. 28]. The Court has conducted a de novo review of the proceedings before Magistrate Judge Thorson. The Court has also reviewed the parties' submissions on appeal and heard arguments of counsel.

**II.    Standard**

A defendant may be detained pending trial if the Court finds there is no

"condition or combination of conditions . . . [that] will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Because the Defendant has been charged under 18 U.S.C. § 2339B, and because the Magistrate Judge found probable cause exists to support these charges, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community. 18 U.S.C. § 3142 (e)(3)(C) (18 U.S.C. § 2339B is a crime listed in 18 U.S.C. § 2332b(g)(5)).

The existence of this presumption places upon the Defendant the "limited burden of production - not a burden of persuasion - to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003)(quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)).

Detention is appropriate where the government proves by clear and convincing evidence that the Defendant is a danger to others or to the community, or when the government proves by a preponderance of the evidence that the Defendant is a risk of flight, and that in either case, there are no conditions or combination of conditions that will assure the safety of the

community or the Defendant's appearance at future court proceedings.

In making this determination, the Court must take into account the following factors:

> (1) The nature and circumstances of the offense charged, including the fact that the crime charged is an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including–
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

**A.      Offense Charged and Weight of the Evidence**

The Defendant has been charged in the Complaint with Conspiracy to Provide Material Support to a Designated Terrorist Organization and Attempt to

Provide Material Support to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1) and § 2. The offenses charged in this case are serious felonies that carry a statutory maximum sentence of 15 years.

As set forth in the sworn Complaint, and as confirmed by the testimony of Special Agent Samit, in May 2014, Abdullahi Yusuf was stopped at the MSP airport as he was attempting to fly to Istanbul, Turkey. The government asserts that Yusuf's ultimate destination was Syria, so he could join ISIL, a foreign terrorist organization. In response to Yusuf's failed attempt to travel to Turkey, it is believed that another individual, Y.J., co-defendant Guled Omar and a confidential human source ("CHS") later tried to drive to San Diego, so they could travel to Syria from Mexico. When this plan was frustrated, Y.J. took a bus to JFK airport and was able to reach Turkey from there.

On November 6, 2014, Guled Omar was stopped at the MSP airport before boarding a flight to San Diego. He had a passport, but no checked luggage. Later, in a conversation with the CHS, Omar told the CHS that he immediately called co-defendant Hanad Musse to inform him that he had been stopped and not allowed to travel to San Diego.

Thereafter, Musse and the Defendant Zacharia Abdurahman and two

others took a Greyhound bus from Minnesota to New York. Once in New York, Musse and Abdurahman booked airline tickets to Athens, Greece. Neither one was allowed to board the plane, however. During questioning by law enforcement, Musse said he was traveling alone to Greece to "chill," that he did not know anyone in Greece and that he had not made any reservations in Greece. Abdurahman also stated that he was traveling alone to Greece, but then later changed his story, stating that he was traveling with Musse. He also volunteered that if he was really going to Syria to join ISIS he would have traveled to Istanbul.

Upon returning to Minnesota, both men were part of a group that in February 2015, was attempting to travel to southern California to collect forged passports and then cross into Mexico, and from there, travel to Syria. The CHS learned from members of the conspiracy that others were in direct contact with Abdi Nur, a man from Minnesota who had flown to Istanbul on May 29, 2014, and whose social media postings and interactions with "Witness 1" showed that he had entered Syria and joined ISIL. The plan to obtain false passports was derailed when Abdi Nur was unable to arrange for the passports from his source. When the plan fell through, the CHS told Guled Omar that he may be able to secure a contact in California for forged travel documents. When such a contact

5

was made, Omar notified others in the conspiracy of the existence of a new source for forged travel documents.

On April 5, 2015, Musse's passport photograph was given to the CHS by co-defendant Adnan Farah. Only after his father confronted him about the plan to leave the United States did Musse ask for his passport photograph back.

Abdurahman also provided the CHS a passport photograph, but later asked that it be given back as he had developed concerns about the security of the plan. Abdurahman nonetheless assisted co-defendant Mohamed Farah by giving the CHS $100 as partial payment for Farah's forged passport.

As set forth above, the weight of the evidence supports a finding of detention. Not only did the Defendant attempt to travel overseas to join a violent terrorist organization, he also participated in attempts to obtain forged travel documents by providing photographs and cash payments.

**B.  Harm to the Community/Risk of Flight**

The Defendant submits that he has provided sufficient evidence to rebut the presumption that he should be detained pending trial, including his lack of criminal history, the fact that he is a United States citizen and is attending college at MCTC. Evidence was also presented that the Defendant works part-time at

the Harriet Tubman Shelter, and that he lives with his mother and siblings. In addition, the Defendant established that he did not obtain a false passport and that even though he was aware that he was a target of an FBI investigation as of November 2014, he did not flee the country. He has turned over his passport to his attorney.

The Court finds that the Defendant poses a risk of harm to the community. He is charged with attempting to join the most violent terrorist organization, ISIL. If he were to succeed, there is harm to the immediate Minnesota community, as the record demonstrates when young men successfully travel and join a terrorist organization, they tend to reach back to Minnesota through social media to recruit other young men.

The Court also finds there would be harm to the wider community - that of civilians in the Middle East - if the Defendant succeeds in his ambition to travel to Syria and join ISIL.

Finally, there is evidence in the record which indicates the Defendant poses a flight risk. Part of the offense conduct in this case involves the Defendant's attempt to travel overseas to join a terrorist organization, and his attempt to obtain forged travel documents to achieve his goal.

### C. History and Characteristics of the Defendant

The Defendant is 19 years old and was born in Minnesota. He is a high school graduate and is a student at MCTC. The Defendant works part-time at the Harriet Tubman Shelter, and he lives with his mother and siblings. The Defendant has a good relationship with his father, who is employed by Head Start as an interpreter and translator.

The Defendant asserts he has traveled outside of the United States once, when he was approximately 11 years old, traveling to Dubai and Sweden with his mother. He further notes that being of Somali descent, he and other Somali people speak and dress differently than most people in Minneapolis. Somali people here are subjected to verbal and physical abuse, but the Defendant has never retaliated against such abuse. He has no mental or physical problems.

The Defendant asserts he is engaged to a young woman named Munna who is also a student at community college. The Defendant has asked permission to marry from Munna's father and they are to be married after they finish school.

## III. Conclusion

Based on the file, record and proceedings herein, the Court finds that the

Defendant has not presented sufficient evidence to rebut the presumption in favor of detention. The Court further finds that there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if the Defendant is released, and that a preponderance of the evidence demonstrates that the Defendant is a flight risk.

IT IS HEREBY ORDERED that the Defendant's Motion to Review the Detention Order of Magistrate Judge Thorson [Doc. No. 30] is **DENIED**. The Defendant shall remain in the custody of the U.S. Marshal pending further Order of this Court.

Date: May 15, 2015

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court