UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No: 15-CR-49 (01) (MJD/FLN)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | PLEA AGREEMENT AND |
| Plaintiff, ) | SENTENCING STIPULATIONS |
| ) | |
| v. ) | |
| ) | |
| 1. HAMZA NAJ AHMED, ) | |
| ) | |
| Defendant. ) | |

The United States of America and Hamza Naj Ahmed (hereinafter referred to as "the defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

## PLEA AGREEMENT

1. **Charge**. The defendant agrees to plead guilty to both Count Two and Count Fourteen of the Second Superseding Indictment. Count Two charges the defendant with conspiracy to provide material support and resources to members of *ISIL (Islamic State of Iraq and the Levant)*, a designated foreign terrorist organization, in violation of Title 18, United States Code § 2339B. Count Fourteen charges the defendant with financial aid fraud, in violation of Title 20, United States Code § 1097(a).

The government agrees to not prosecute the defendant for any additional offenses disclosed to the government by the defendant or known by the government as of the date of

1



this agreement. However, all conduct known by the government can and will be used as relevant conduct under the Federal Sentencing Guidelines and as factors under 18 U.S.C. § 3553(e) at the defendant's sentencing. At sentencing, the government will move to dismiss the remaining charges in the Second Superseding Indictment as to the defendant.

2. **Factual Basis and Stipulated Facts**. It is stipulated that the allegations made in Counts Two and Fourteen of the Superseding Indictment are true and that the defendant is guilty of these charges. The defendant agrees that the following facts are accurate and that the government has sufficient evidence to prove the following at trial:

Between on or about March 1, 2014, and June 1, 2014, the defendant became aware of a group of individuals in both the United States and outside the United States (hereinafter, "the co-conspirators") who had traveled or who desired to travel overseas to join *ISIL (Islamic State of Iraq and the Levant)*, a designated foreign terrorist organization. Defendant was aware that *ISIL* was a designated foreign terrorist organization that engaged in terrorism and terrorist activity.

In or around May 2014, the defendant enrolled at the Minnesota Community and Technical College ("MCTC") and had applied for and been awarded financial aid to assist with the costs of attending college. In fact, the defendant completed the Free Application for Federal Student Aid ("FAFSA") on May 21, 2014, and indicated on the FAFSA that the federal financial aid would be used to attend MCTC. The defendant further signed an acknowledgement that the federal funds he would receive could be used only "to pay the cost of attending an institution of higher education." The defendant's application for federal student aid was successful and, on October 21, 2014, the defendant received

2

approximately $2750 of federal financial aid. These funds were made available and insured by the United States Department of Education.

In October of 2014, the defendant and his co-conspirators Hanad Musse ("Musse"), Zacharia Abdurahman ("Abdurahman"), Mohamed Farah, Adnan Farah, Guled Omar ("Omar"), Abdirahman Daud, ("Daud"), Abdullahi Yusuf, and other unindicted co-conspirators engaged in meetings, discussions and preparations for travel to Syria to join and fight with *ISIL*. The topics discussed by the co-conspirators included how to finance and accomplish their intended travel without detection by law enforcement. As a result of these discussions, the defendant and others decided to use the financial aid funds provided to them to further their education in order to accomplish their intended travel.

Beginning on October 21, 2014, and continuing through October 30, 2014, the defendant made a series of six (6) cash withdrawals from his federal financial aid account totaling $2,700 and then re-deposited these funds into a personal checking account that he subsequently opened at a Wells Fargo Bank on November 6, 2014. The defendant later used these funds, as described below, to purchase both bus and airplane tickets that would enable him to travel from Minnesota to Syria.

In furtherance of the conspiracy alleged in Count Two of the Second Superseding Indictment, the defendant and co-conspirators Mohamed Farah, Abdurahman, and Musse purchased Greyhound bus tickets from Minneapolis to New York City on or about November 6, 2014. The defendant then traveled by Greyhound bus with Mohamed Farah to New York City where, as planned, he met co-conspirators Abdurahman and Musse at John F. Kennedy International Airport ("JFK"). While at JFK on November 8,

3

2014, the defendant purchased a round-trip ticket to Madrid, Spain, which included a layover in Istanbul, Turkey. The defendant knew that co-defendant Mohamed Farah had also purchased a ticket for this same flight from New York to Istanbul. From Istanbul, co-defendant Mohamed Farah was ticketed to Sofia, Bulgaria, while the defendant's itinerary called for him to backtrack nearly 1000 miles to Madrid, Spain. At no time did the defendant intend to complete the trip to Madrid, rather, he planned to abandon his booked travel, leave the airport in Istanbul, and travel overland from Istanbul, Turkey, into Syria, where he intended to join *ISIL*. The defendant further knew that co-defendants Abdurahman and Musse were departing JFK that same day booked to other interim destinations but with the ultimate purpose of traveling to Syria to join *ISIL*.

The defendant was prevented by federal agents in New York from boarding his flight and was later interviewed in Minneapolis by FBI agents. The defendant lied to the interviewing agents about the true nature of his travel by maintaining that he intended to vacation in Madrid. The defendant also failed to notify agents that it was known to him that co-conspirators Musse, Mohamed Farah, and Abdurahman also intended to travel to join *ISIL* after departing the United States via JFK.

3. **Waiver of Pretrial Motions**. The defendant has filed pretrial motions and now withdraws those motions based on the defendant's decision to enter a plea agreement with the United States. The defendant understands that by withdrawing the motions no court will consider or rule on the merits of those motions. The defendant withdraws these motions knowingly, voluntarily, and intelligently. The defendant also understands and

4

agrees that his decision to enter a plea agreement with the United States requires him to abandon on appeal all adverse decisions previously made the court on his motions.

4. **Statutory Penalties.** The parties agree that Count Two of the Second Superseding Indictment carries maximum statutory penalties of:

    a.    fifteen (15) years' imprisonment;

    b.    a supervised release term of life;

    c.    a criminal fine of $250,000; and

    d.    a mandatory special assessment of $100, which is payable to the Clerk of Court immediately after sentencing.

The parties agree and the defendant understands that Count Fourteen of the Second Superseding Indictment carries maximum statutory penalties of:

    a.    five (5) years' imprisonment;

    b.    three (3) years' supervised release;

    c.    a criminal fine of $20,000;

    d.    a mandatory special assessment of $100, which is payable to the Clerk of Court immediately after sentencing.

Accordingly, by pleading guilty to both Count Two and Count Fourteen of the Second Superseding Indictment, the defendant could face a maximum of twenty (20) years' imprisonment, a fine of up to $270,000, a supervised release term of life, and a mandatory special assessment of $200.

5.     **Revocation of Supervised Release**.  The defendant understands that, if he were to violate any condition of supervised release, he could be sentenced to an additional term of imprisonment pursuant to 18 U.S.C. §3583(e).

6.     **Guideline Sentencing Stipulations**.  The defendant understand he will be sentenced in accordance with the Federal Sentencing Act, 18 U.S.C. § 3551, *et seq.*, with reference to the applicable United States Sentencing Guidelines ("U.S.S.G."). The parties believe that the Guidelines Manual incorporating amendments effective November 1, 2013, applies in this case. The parties agree that the following calculations regarding the Guidelines will ultimately be determined by the Court:

### Count Two

a.  Base Offense Level.
    The parties agree that the applicable guideline section is section U.S.S.G. § 2M5.3(a), which provides a base offense level of 26.

b.  Specific Offense Characteristics.
    The parties agree that the facts of this case support no specific offense characteristics.

### Count Fourteen

c.  Base Offense Level.
    The parties agree that the applicable guidelines section is U.S.S.G. § 2B1.1(a)(2), which provides a base offense level of 6.

d.  Specific Offense Characteristics.
    The parties agree that the facts of this case support no specific offense characteristics.

### Multiple Count Guideline Calculations

e.  The parties believe Count Two and Count Fourteen group together under U.S.S.G. § 3D1.2.  In the government's view, the resulting base offense level is **26**.

6

f. Chapter 3 Adjustments.
The parties agree that the 12-level adjustment described at U.S.S.G. § 3A1.4(a) applies.

g. Acceptance of Responsibility. If the defendant (1) provides full, complete and truthful disclosures to the United States Probation Office, including providing complete, accurate and truthful financial information; (2) complies with all conditions of release; (3) testifies truthfully during the change of plea and sentencing hearings; (4) complies with this Agreement; and (5) undertakes no act inconsistent with acceptance of responsibility before the time of sentencing, the government agrees to recommend that the defendant receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and to move for an additional one-level reduction under U.S.S.G. § 3E1.1(b). Whether there will be a reduction for acceptance of responsibility shall be determined by the Court in its discretion.

h. Total Offense Level.
With the application of U.S.S.G. § 3A1.4, the adjusted offense level is 38, minus 3 points for acceptance of responsibility, if applicable, for a total offense level of 35.

The Court will make the final determination of the total offense level.

i. Criminal History Category.
The parties believe that because U.S.S.G. § 3A1.4 enhancement applies, the defendant has a criminal history category of VI.

j. Guidelines Range. The parties agree that if the adjusted offense level is 35, and the defendant's criminal history category is VI, then the Guidelines range is 292-365 months. However, because the statutory maximum sentence is 20 years (240 months), the parties agree that the defendant's guidelines range is 240 months' imprisonment.

k. Fine Range.
The parties agree that if the total offense level is 35, the fine range is $20,000 to $200,000. U.S.S.G. § 5E1.2. There is no agreement as to the imposition of a fine or, if one is imposed, the amount of any such fine.

l. Supervised Release.
The parties agree that the Sentencing Guidelines specify that, if a term of supervised release is ordered, the term of supervised release is 2 years to life. U.S.S.G. §§ 5D1.2(a)(2) and 5D1.2(b)(1).

7

    m.    **Departures:**
The parties agree that the defense reserves its right to argue for a downward departure or variance from the ultimate guideline determination in this case.

    n.    **Further Offense Characteristics:**
The parties agree that the facts of this case support no other specific offense characteristics or chapter three adjustments.

7.    **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determinations regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this Agreement and the defendant will be sentenced pursuant to the Court's determinations.

8.    **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. In this case, the defendant stands convicted of two counts and is required to pay $200.

9.    **Forfeiture.** The government reserves its right to proceed against any of the defendant's assets if said assets represent real or personal property involved in violations of the laws of the United States or are proceeds traceable to such property.

8

10. **Immigration Consequences**. The defendant recognizes that pleading guilty may have consequences with respect to his immigration status, including removal or deportation, if he is not a citizen of the United States. The defendant understands that no one, including his attorney, the Assistant U.S. Attorney, or the District Court, can predict to a certainty the effect of his conviction on his immigration status. Regardless of any immigration consequences that may follow from his guilty plea, including the possibility of mandatory removal or deportation from the United States, the defendant still wishes to plead guilty as set forth in this agreement.

11. **Complete Agreement**. The foregoing sets forth the full extent of the Plea Agreement and Sentencing Stipulations in the above-captioned case.

Dated: April 25, 2016

ANDREW M. LUGER
United States Attorney

BY: JOHN DOCHERTY
ANDREW R. WINTER
JULIE E. ALLYN
Assistant United States Attorneys

Dated: April 25, 2016

HAMZA NAJ AHMED
Defendant

Dated: April 25, 2016

JANEANNE MURRAY, Esq.
Attorney for defendant Ahmed